IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00054-CV

 

In
the Interest of M.V.G., a Child

 

 

 

 



From the 413th District
Court

Johnson County, Texas

Trial Court No. D200706344

 



Opinion



 








            The mother and father of the
child the subject of this suit have each perfected an appeal from the order terminating
their parental rights.  The mother contends in her sole issue that the evidence
is legally and factually insufficient to support any of the predicate grounds
for termination or the court’s finding that termination is in the best interest
of the child.  The father contends in five points that: (1) the court erred by
denying his request for a jury trial; (2) the court erred by rendering a
default judgment against him; (3) the evidence is insufficient to support the
termination order; (4) this appeal is not frivolous; and (5) section 263.405 of
the Family Code is unconstitutional.  We will affirm.

BACKGROUND

            The mother “Patricia”[1]
gave birth to M.V.G. in a Galveston hospital while she was incarcerated for a
state jail felony.  The father “Joel” lived in Cleburne.  The day after
M.V.G.’s birth, Patricia gave Joel’s contact information to CPS caseworker
Linda Lawrence and told her that he was making arrangements for M.V.G. to live
with him.  Two days later, CPS supervisor Marty Samaniego talked to Joel and
tried to arrange a meeting.  Joel said that he could not talk at the moment because
of work, so Samaniego advised him that the Department was taking emergency
custody of M.V.G. and there would be an emergency removal hearing.  Joel told
Samaniego that Patricia and he wanted custody of M.V.G. and planned to move to
Puerto Rico where his family lives.

            During the next eleven
months, the usual hearings were conducted.  The Department essentially did not
provide services to Patricia for eleven months because of her incarceration. 
She was released from custody just over ten months after M.V.G.’s birth and
returned to Cleburne.  The court extended the statutory dismissal date for
ninety days.  Patricia visited M.V.G. about fourteen times after her release,
but she never completed any of the tasks required by the family service plan.  At
the last hearing before trial, Patricia testified about various difficulties in
obtaining these services.

            For his part, Joel visited
M.V.G. regularly during the first eight months of the Department’s involvement
but never completed any of the required tasks.  He disagreed with the
Department’s efforts to pursue drug screening by a hair follicle test, stating
his preference for urinalysis.  He filed a motion for visitation which the
court heard shortly after M.V.G.’s first birthday.  The court denied the motion
after Joel informed the court that he would not submit to the hair follicle
test.

            Joel did not appear for
trial.  Patricia announced that she was waiving her right to jury trial.  The
court ruled that Joel waived his right to jury trial under Rule of Civil
Procedure 220 by failing to appear.  See Tex. R. Civ. P. 220.  The court also pronounced its rendition
of “a post answer default judgment” against him.  At the conclusion of a
three-day bench trial, the court rendered judgment terminating Patricia’s
parental rights.  The court signed its Order of Termination almost three weeks
later.

PATRICIA’S APPEAL

            In her sole issue, Patricia
contends that the evidence is legally and factually insufficient to support any
of the predicate grounds for termination or the finding that termination is in
the best interest of the child.

            In a legal sufficiency
review, a court should look at all the evidence in the light most favorable to
the finding to determine whether a reasonable trier of fact could have formed a
firm belief or conviction that its finding was true.  To give appropriate
deference to the factfinder’s conclusions and the role of a court conducting a
legal sufficiency review, looking at the evidence in the light most favorable
to the judgment means that a reviewing court must assume that the factfinder
resolved disputed facts in favor of its finding if a reasonable factfinder
could do so.  A corollary to this requirement is that a court should disregard
all evidence that a reasonable factfinder could have disbelieved or found to
have been incredible.

 

In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002); In
re T.N.F., 205 S.W.3d 625, 630 (Tex. App.—Waco 2006, pet. denied).

            In conducting a factual
sufficiency review, “a
court of appeals must give due consideration to evidence that the factfinder
could reasonably have found to be clear and convincing.”  Id.

[T]he inquiry must be “whether the
evidence is such that a factfinder could reasonably form a firm belief or
conviction about the truth of the State’s allegations.”  A court of appeals
should consider whether disputed evidence is such that a reasonable factfinder
could not have resolved that disputed evidence in favor of its finding.  If, in
light of the entire record, the disputed evidence that a reasonable factfinder
could not have credited in favor of the finding is so significant that a
factfinder could not reasonably have formed a firm belief or conviction, then
the evidence is factually insufficient.

 

J.F.C., 96 S.W.3d at 266 (quoting In re
C.H., 89 S.W.3d 17, 25 (Tex. 2002)) (footnotes omitted); T.N.F., 205
S.W.3d at 630.

            CPS alleged and the trial
court found four predicate grounds for termination, namely, that Patricia: (1) knowingly
placed or allowed M.V.G. to remain in dangerous conditions or surroundings; (2)
engaged in conduct or knowingly placed M.V.G. with persons who engaged in
conduct which endangered her; (3) constructively abandoned M.V.G.; and (4) failed
to comply with a court order that established the actions necessary for the
return of M.V.G.  See Tex. Fam.
Code Ann. § 161.001(1)(D), (E), (N), (O) (Vernon Supp. 2009).  We may
affirm if the evidence is sufficient with respect to any one of these predicate
grounds.  T.N.F., 205 S.W.3d at 629.

Constructive Abandonment

            A parent constructively
abandons a child when (1) the child has been in the permanent or temporary
managing conservatorship of the State or an authorized agency for not less than
six months, (2) the State or the authorized agency has made reasonable efforts
to return the child to the parent, (3) the parent has not regularly visited or
maintained significant contact with the child, and (4) the parent has
demonstrated an inability to provide the child with a safe environment.

 

In re M.R.J.M., 280 S.W.3d 494, 505 (Tex. App.—Fort
Worth 2009, no pet.); accord Earvin v. Dep’t of Family & Protective
Servs., 229 S.W.3d 345, 348 (Tex. App.—Houston [1st Dist.] 2007, no pet.); see
Tex. Fam. Code Ann. § 161.001(1)(N).

(1) Purposeful Abandonment

            With regard to the first
element, Patricia concedes that M.V.G. was in foster care for at least six
months but disputes that M.V.G. was in foster care because of any purposeful
abandonment on Patricia’s part.  See Earvin, 229 S.W.3d at 349 (no
evidence parent “purposefully had little interaction with S.M.E.”).  Patricia
refers to evidence that Joel and she planned for him to get M.V.G. from the
hospital and take her to Puerto Rico where they would live with their extended
family.  Patricia argues that they never had a chance to carry out their plans
because the Department did not contact Joel before removing M.V.G. even though
she had given his contact information to CPS caseworker Lawrence at the
hospital.  CPS investigator Tina Herrera confirmed in her testimony that she
did not contact Joel until after taking custody of M.V.G.  However, she
arranged for Joel to visit M.V.G. a few days after she was brought to Cleburne.

            Joel attended the emergency
removal hearing the next day.  He told the court of his plans to leave for
Puerto Rico thirteen days later and asked if he could take M.V.G. with him if
he had a “clean” drug test.  The court advised that another hearing would need
to be held and, if Joel had “some clean drug tests,” then the court would
consider his request.  Joel did not take a drug test and left for Puerto Rico. 
He did not appear in court again until six months later.  He submitted to only
one drug test (by oral swab) during the fourteen months the case was pending,
refused to submit to urinalysis or hair follicle drug tests ordered by the
court, and wholly failed to comply with his service plan.

            Imprisonment, standing
alone, does not constitute constructive abandonment.  In re D.T., 34
S.W.3d 625, 633 (Tex. App.—Fort Worth 2000, pet. denied); see In re N.S.G.,
235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.).

[But] it is simply a “cop-out” (in the
vernacular of the 70’s) for anyone to conclude that prison ipso facto
prevents (or relieves) the parent from providing the child a safe environment. 
Again, the incarcerated parent may be able to work through surrogates, such as
relatives, spouses, or friends, to fulfill that obligation.  And, if he so
arranges and those surrogates agree to the arrangement, it is hard to deny that
the parent has taken steps to provide or effectively provided a safe
environment.  To suggest otherwise would be to suggest that military personnel
cannot provide for their children because they may be assigned overseas to
combat duty.  In that situation, family is often available to step in and
help.  The same can be no less true when a parent is incarcerated.

 

In re D.S.A., 113 S.W.3d 567, 573-74 (Tex. App.—Amarillo 2003, no pet.).

            Here, Patricia made arrangements
for Joel to take custody of M.V.G. during her incarceration, but he failed to
take the necessary actions to gain custody.  Patricia also informed the
Department that relatives in Puerto Rico might be able to care for M.V.G. 
However, CASA volunteer Gloria Johnson testified that she talked to one of
those relatives and was convinced from that conversation that there was no
appropriate or safe environment available for M.V.G. in Puerto Rico.[2]

            Considering all the evidence
in a neutral light, we hold that the evidence is such that the court “could
reasonably form a firm belief or conviction” that Patricia constructively
abandoned M.V.G. by leaving her in Department custody for at least six months
without providing an alternative, safe, and appropriate custody arrangement for
her.  See D.S.A., 113 S.W.3d at 572 (evidence factually sufficient where
incarcerated parent’s mother testified that a relative would take the children
but it never happened).  Thus, the evidence is factually sufficient on this
element, and because the evidence is factually sufficient, it is necessarily
legally sufficient.  Id.
at 573.

(2) Reasonable Efforts to Return the
Child

            The second element is
whether the Department “made reasonable efforts to return the child.”  Tex. Fam. Code Ann. § 161.001(1)(N)(i). 
Patricia contends that the Department failed to make reasonable efforts because:
(1) it did not formally serve her with citation until three months after taking
M.V.G.; (2) it did not provide services for her while she was incarcerated; (3)
the assigned caseworker sent letters to her in English even though she speaks
Spanish; (4) the Department contacted only one other family member for
alternative placement; and (5) it failed to arrange transportation for her to
obtain counseling and other required services.

            “The State’s preparation and
administration of a service plan for the parent constitutes evidence that the
State made reasonable efforts to return the child to the parent.”  M.R.J.M.,
280 S.W.3d at 505; accord M.C. v. Tex. Dep’t of Family & Protective
Servs., 300 S.W.3d 305, 309-10 (Tex. App.—El Paso 2009, pet. denied); Liu
v. Dep’t of Family & Protective Servs., 273 S.W.3d 785, 795 (Tex.
App.—Houston [1st Dist.] 2008, no pet.).

            We first observe that
Patricia relies in part on testimony from various pretrial hearings to show
that the Department had failed to promptly conduct a home study of Joel’s
mother’s home in Puerto Rico, had been given the names of “more than one”
relative to contact but only contacted one,[3]
and had assured the court that it would provide services to Patricia while she
was incarcerated.  She also relies on her own testimony from a December
permanency hearing to show that the Department had notice that she did not have
reliable transportation to drive to Dallas or Fort Worth for Spanish counseling
and other services.  However, this testimony was not admitted at trial.  See
In re C.L., No. 10-09-00117-CV, 2009 WL 3319932, at *4-5 (Tex. App.—Waco
Oct. 14, 2009, no pet.) (evidence legally insufficient to support termination
where trial court did not take judicial notice of prior orders or hearings).

            Nevertheless, the testimony
at trial established that the Department provided no services to Patricia while
she was incarcerated, but CPS caseworker Tonya Gilley testified that the
Department had no contract services available at the state jail where she was
located.  Upon Patricia’s release, a visit with M.V.G. was arranged for her
within a week.  She received her first service plan about two weeks later on
October 15.  She had more than three months to work on the tasks set out in the
service plan but failed to do any of them.

            Patricia testified that she
does not understand the English language and could not read the letters sent to
her by caseworkers, but Gilley testified that Patricia had communicated in the
past with limited English.  In any event, once Patricia was released, a Spanish
translator was provided whenever she met with the caseworker, and Spanish
language services were made available to her as well.

            Regarding transportation,
Patricia testified that she asked the Department for help with transportation,
but CPS Diann Ames testified that she did not know until Patricia testified at
trial that her van did not have a current registration.  She had seen Patricia
driving the van to visits and assumed it was roadworthy.  She did recall that
Patricia testified at the December permanency hearing that the van did not have
a current inspection sticker.

            There is conflicting
testimony on this element, and there probably are things the Department could
have done differently, but the issue is whether the Department made “reasonable
efforts” not ideal efforts.

            Considering all the evidence
in a neutral light, we hold that the evidence is such that the court “could reasonably
form a firm belief or conviction” that the Department made reasonable efforts
to return M.V.G.  Thus, the evidence is factually sufficient on this element,
and because the evidence is factually sufficient, it is necessarily legally
sufficient.  See D.S.A., 113 S.W.3d at 573.

(3) Regular Visits

            The third element is whether
Patricia has “regularly visited or maintained significant contact with [M.V.G.]” 
Tex. Fam. Code Ann. § 161.001(1)(N)(ii). 
On this issue, Patricia refers to letters she mailed to the caseworker while
she was incarcerated, and the fourteen visits she had with M.V.G. from October
to December.  However, Gilley testified that the Department received only two
letters from Patricia during the eleven months she was incarcerated.  Also, Patricia
refused to submit to a drug test in early December, missed a scheduled visit
one week later, and did not have a single visit with M.V.G. for more than a
month and a half before trial.

            There is conflicting
testimony on this element as well.  But the court could have been persuaded
more by Patricia’s lack of effort to maintain contact with M.V.G. during the
first eleven months of her life and the lack of visits during the two months
before trial than by the frequent visits she had between October and December.

            Considering all the evidence
in a neutral light, we hold that the evidence is such that the court “could
reasonably form a firm belief or conviction” that Patricia failed to regularly
visit or maintain significant contact with M.V.G.  Thus, the evidence is
factually sufficient on this element, and because the evidence is factually
sufficient, it is necessarily legally sufficient.  See D.S.A., 113
S.W.3d at 573.

(4) Safe Environment

            The final element is whether
Patricia “demonstrated an inability to provide [M.V.G.] with a safe
environment.”  Id. § 161.001(1)(N)(iii).  Here, Patricia
refers to the Department’s failure to explore placement alternatives in Puerto
Rico and the failure to re-visit her home after an initial visit in early
October.  However, Ames testified that she went to Patricia’s home three times
after the initial visit but no one answered the door even though the van was in
the driveway.  Johnson testified that she visited later and it did appear that
Patricia had been cleaning the house and had obtained a baby bed for M.V.G.,
but Johnson also testified that she was aware of “no facts to prove that
[Patricia and Joel] are capable of providing the environment that [M.V.G.]
requires.”  In addition, Johnson testified that she made several phone calls to
Puerto Rico and was
convinced that there was no appropriate or safe environment available for
M.V.G. in Puerto Rico.

            Considering all the evidence
in a neutral light, we hold that the evidence is such that the court “could
reasonably form a firm belief or conviction” that Patricia “demonstrated an
inability to provide [M.V.G.] with a safe environment.”  Thus, the evidence is
factually sufficient on this element, and because the evidence is factually
sufficient, it is necessarily legally sufficient.  See D.S.A., 113
S.W.3d at 573.

Summary

            There is conflicting
evidence in the record, but we conclude that the evidence is legally and
factually sufficient to support the court’s finding of constructive abandonment
under section 161.001(1)(N).

Best Interest of Child

            Patricia also challenges the
sufficiency of the evidence to support the best interest finding.

            The primary factors to
consider when evaluating whether termination is in the best interest of the
child are the familiar Holley factors, which include:

(1) the desires of the child; (2) the
emotional and physical needs of the child now and in the future; (3) the
emotional and physical danger to the child now and in the future; (4) the
parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals to promote the best interest of the
child; (6) the plans for the child by these individuals or by the agency
seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent which may indicate that the existing
parent-child relationship is not a proper one; and (9) any excuse for the acts
or omissions of the parent.  

 

Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976); T.N.F.,
205 S.W.3d at 632.

            Desires of the Child:
Because of M.V.G.’s age, there is no evidence relevant to this factor.  See
In re S.N., 272 S.W.3d 45, 51-52 (Tex. App.—Waco 2008, no pet.).

            Child’s Emotional and
Physical Needs: M.V.G. has the usual emotional and physical needs of a
toddler.  The foster parents are currently meeting her needs in a safe and
secure environment.  There is limited evidence with regard to whether Patricia
can adequately provide for her needs because they have had so little
interaction outside of the scheduled visits.  However, the record does contain
evidence giving rise to a concern about Patricia’s ability to provide for
M.V.G.’s needs because she: (1) has not provided information regarding her
family income and expenses; (2) apparently does not have reliable transportation;
(3) has not allowed a follow-up visit inside her home; (4) declined to submit
to drug testing; and (5) did not work on her service plan.  In addition, some
testimony was presented at trial raising a possibility that Patricia had moved
out of the house she shared with Joel, but she was not asked about this during
her own testimony.  Thus, the record contains conflicting evidence on this
issue.

            Emotional and Physical
Danger to Child: The primary evidence relevant to this factor is Patricia’s
refusal to submit to a drug test and her failure to allow a follow-up visit
inside her home.  This evidence supports a finding that Patricia poses a
present or future risk of danger to M.V.G.  Id.
at 52-53.

            Parental Abilities:
Patricia interacted appropriately with M.V.G. during her visits.  She did not
participate in parenting classes and other services which would have
potentially enhanced her parental abilities. Thus, the record contains
conflicting evidence on this issue.  Id. at 53.

            Available Programs:
Patricia did not participate in the programs that were made available to her. 
There is no evidence that this would change in the future.  Thus, the evidence
relevant to this factor supports the best-interest finding.  Cf. id.

            Plans for the Child:
Patricia planned to take M.V.G. to Puerto Rico to be reunited with her
siblings.  She was consistent with her plans for M.V.G. from her birth.  Thus,
the evidence relevant to this factor does not support the best-interest
finding.  Id.

            Stability of the Home:
We have already discussed at length the evidence relevant to the stability of
Patricia’s home.  The evidence relevant to this factor supports the
best-interest finding.  See id. at 53.

            Patricia’s Acts and
Omissions (and Excuses): Patricia established a good pattern of visitation
with M.V.G. after her release from custody.  She also indicated that she was
working to clean up her home to provide a safe environment for M.V.G.  However,
she did not perform any of the services ordered by the court and of particular
concern refused to submit to a drug test.  In addition, she never allowed Ames
to have a follow-up visit inside her home to confirm her progress, though Ames
attempted to do so at least three times.  Although Patricia testified that a
lack of reliable transportation was the reason she was unable to perform the
services, Ames and Johnson testified that she gave other excuses to them
including issues with paperwork, language barriers, and not wanting to use her
cell phone minutes waiting on hold when trying to make appointments with
providers.  Here again the record contains conflicting evidence regarding these
factors.

            Summary: To the
extent there is conflicting evidence in the record regarding the best-interest
factors, it was within the court’s discretion as finder of fact to resolve
those conflicts against Patricia.
 See In re A.M.C., 2 S.W.3d 707, 717 (Tex. App.—Waco 1999, no pet.).  Considering
all the evidence in a neutral light, we hold that the evidence is such that the
court “could reasonably form a firm belief or conviction” that termination of
Patricia’s parental rights would be in M.V.G.’s best interest.  Thus, the
evidence is factually sufficient on this element, and because the evidence is
factually sufficient, it is necessarily legally sufficient.  See D.S.A.,
113 S.W.3d at 573.

            We overrule Patricia’s sole
issue.

JOEL’S APPEAL

            Joel contends in five points
that: (1) the court erred by denying his request for a jury trial; (2) the
court erred by rendering a default judgment against him; (3) the evidence is
insufficient to support the termination order; (4) this appeal is not
frivolous; and (5) section 263.405 of the Family Code is unconstitutional.

Frivolousness Determination

            Joel’s fourth point
challenges the court’s finding that his appeal is frivolous but provides no
argument or authority.[4] 
Nevertheless, he has briefed the four other points noted on their merits.  “[S]ection
263.405(g) clearly limits this Court’s review at this juncture to the issue of
whether [Joel’s] appeal is frivolous.”  In re S.T., 242 S.W.3d 923, 926
(Tex. App.—Waco, order) (per curiam), disp. on merits, 263 S.W.3d 394
(Tex. App.—Waco 2008, pet. denied); see In re K.D., 202 S.W.3d 860,
865 (Tex. App.—Fort Worth 2006, no pet.); Tex.
Fam. Code Ann. § 263.405(g) (Vernon 2008).  Therefore, we construe
Joel’s appellate points as challenging the trial court’s determination that the
issues discussed are frivolous.  See, e.g., In re M.L.J., No.
02-07-00178-CV, 2008 WL 1932076, at *3 (Tex. App.—Fort Worth May 1, 2008, pet.
denied) (mem. op.).

We review the court’s decision under an
abuse-of-discretion standard.  S.T., 263 S.W.3d at 398; K.D., 202
S.W.3d at 866.  “An appeal is frivolous when it lacks an arguable basis in law
or in fact.”  S.T., 263 S.W.3d at 398 (quoting In re M.N.V., 216
S.W.3d 833, 834 (Tex. App.—San Antonio 2006, no pet.); accord K.D., 202
S.W.3d at 866.  For the reasons which follow, we conclude that Joel’s appeal is
not frivolous and the trial court abused its discretion by concluding
otherwise.  See In re A.S., 241 S.W.3d 661, 666 (Tex. App.—Texarkana 2007,
no pet.) (appeal not frivolous where trial court improperly denied jury
request).

Right to Jury Trial

            Joel contends in his first
point that the court abused its discretion by denying his request for a jury
trial.[5]

            Joel filed a jury demand and
tendered the requisite fee.  See Tex.
R. Civ. P. 216.  When Joel failed to personally appear for trial, the
court advised his counsel that Joel had waived his right to a jury under Rule
of Civil Procedure 220.  Id. 220.

Rule 220 provides in pertinent part, “Failure
of a party to appear for trial shall be deemed a waiver by him of the right to
trial by jury.”  Id.  “[F]or purposes of Rule 220, a party,
although not personally present, appears for trial when his attorney is present.” 
In re W.B.W., 2 S.W.3d 421, 422 (Tex. App.—San Antonio 1999, no pet.)
(quoting Rainwater v. Haddox, 544 S.W.2d 729, 732 (Tex. Civ. App.—Amarillo
1976, no writ)).  Thus, the court abused its discretion by removing Joel’s case
from the jury docket.  Id.  Such error requires reversal “when the case
contains material fact questions.”  Mercedes-Benz Credit Corp. v. Rhyne,
925 S.W.2d 664, 667 (Tex. 1996); accord Hollywood Park Humane Soc’y v. Town
of Hollywood Park, 261 S.W.3d 135, 139 (Tex. App.—San Antonio 2008, no
pet.); A.S., 241 S.W.3d at 666.

CPS alleged and the trial court found
three predicate grounds for termination, namely, that Joel: (1) knowingly
placed or allowed M.V.G. to remain in dangerous conditions or surroundings; (2)
engaged in conduct or knowingly placed M.V.G. with persons who engaged in
conduct which endangered her; and (3) failed to comply with a court order that
established the actions necessary for the return of M.V.G.  See Tex. Fam. Code Ann. § 161.001(1)(D),
(E), (O).

As noted, Joel’s third point challenges
the sufficiency of the evidence to support the termination order.  He does not,
however, clearly specify which of the predicate grounds for termination he is
challenging.  Instead, he challenges the findings that: (1) he “engaged in any
act to endanger or abandon the child or leave her at places or with persons
that would either”; (2) “engaged in any of the acts found by the trial court”;
or (3) actively or constructively abandoned the child.  Because Joel’s third
point challenges the court’s findings regarding his conduct, we construe it as
challenging the second and third predicate grounds for termination (abuse and
failure to comply with court order) but not the first (neglect).

A finding under (D) that a parent has knowingly
placed or allowed a child to remain in dangerous conditions or surroundings is
based on the child’s “conditions and surroundings” rather than the parent’s
conduct.  S.N., 272 S.W.3d at 61; see In re S.K., 198 S.W.3d 899,
902 (Tex. App.—Dallas 2006, pet. denied); In re D.J.J., 178
S.W.3d 424, 429 (Tex. App.—Fort Worth 2005, no pet.).  Because Joel does not
challenge this finding on appeal, he cannot (and does not)[6]
contend that a material fact question exists on this predicate ground for
termination.  Thus, he cannot show that the error in denying his jury request
requires reversal.  See Hollywood
Park Humane Soc’y, 261
S.W.3d at 139.

We overrule Joel’s first point.

Default Judgment

            Joel contends in his second
point that the court abused its discretion by rendering a post-answer default
judgment against him.

            There is no default when a
party fails to appear for trial but counsel appears on the party’s behalf.  LeBlanc
v. LeBlanc, 778 S.W.2d 865, 865
(Tex. 1989) (per curiam); In
re K.C., 88 S.W.3d 277, 279
(Tex. App.—San Antonio 2002,
pet. denied).  Thus the court abused its discretion by rendering a default
judgment against Joel.

            Joel contends that he was
harmed because the court refused to permit his counsel to call witnesses,
present evidence, or present argument on Joel’s behalf.  At the beginning of
trial, Joel’s counsel asked whether he would be permitted to cross-examine
witnesses or call witnesses in view of the court’s oral rendition of a default
judgment.  The trial court advised counsel that he could cross-examine
witnesses and, if he desired to call a witness, the court would examine the
matter at that point to determine whether he would be permitted to do so.  The
court also permitted counsel to make an opening statement on Joel’s behalf.

            Joel’s counsel actively participated
in virtually the entire trial, making objections which the court ruled on,
cross-examining witnesses, and offering exhibits which were admitted in
evidence.  Counsel never attempted to call a witness on Joel’s behalf.  At the
conclusion of trial, the court overruled Joel’s motion for directed verdict. 
The court confirmed its prior ruling that counsel was not permitted to offer
evidence or call witnesses, yet counsel had in fact offered evidence which was
admitted and counsel never attempted to call a witness to testify and never
identified any witnesses whom counsel wanted to call.  Counsel was not
permitted to make a final argument on Joel’s behalf.

            To the extent counsel was
not permitted to present witnesses on Joel’s behalf, he did not identify a
single witness to the trial court (either during the trial or the hearing on
his motion for new trial) whom he wished to call nor the substance of such
witness’s testimony.  Neither has he done so in his appellate brief.  Thus, it cannot
be said that he was harmed by the trial court’s erroneous rendering of a
default judgment.  See Hughes v. Grogan-Lamm Lumber Co., 331 S.W.2d 799,
803 (Tex. Civ. App.—Dallas 1960, writ ref’d n.r.e.) (“no showing was made on
the motion for new trial that McCollough would probably be present at another
trial, or what his testimony would be, nor how or in what manner it would
probably cause the rendition of a different verdict”); Clark v. Brown,
234 S.W.2d 1013, 1014 (Tex.
Civ. App.—San Antonio 1950,
no writ); cf. Harrison v. State, 187 S.W.3d 429, 435 (Tex. Crim. App. 2005)
(“If an appellant seeks a new trial based on the denial of a motion for
continuance for an absent witness, he must file a sworn motion for new trial,
stating the testimony that the missing witness would have provided.”).

            We overrule Joel’s second
point.

Sufficiency of the Evidence

            Joel challenges the legal
and factual sufficiency of the evidence to support the termination order in his
third point.  However, he does not challenge the sufficiency of the evidence to
support the affirmative finding on the predicate ground for termination under
(D) that a parent has knowingly placed or allowed a child to remain in
dangerous conditions or surroundings.  Nor does he challenge the sufficiency of
the evidence to support the best interest finding.  See S.N., 272 S.W.3d
at 49 (“to mount a successful challenge on appeal based on evidentiary
insufficiency, a party must challenge each affirmative finding of a predicate
ground for termination or at minimum challenge the best interest finding”).

            We overrule Joel’s third
point.

Constitutionality of Section 263.405

            Joel contends in his fifth
point that section 263.405 of the Family Code is unconstitutional because it:
(1) interferes with the jurisdiction of the appellate court; (2) “attempts to
deny the right to counsel to an appealing litigant”; (3) “interferes with the
due process and orderly jurisprudence in this Court and its jurisdiction over
an appeal”; and (4) “further attempts to limit the jurisdiction of this Court
by requiring a statement of points for appeal and limits the manner and type of
claims that can be preserved in a motion for new trial.”

            We construe Joel’s complaint
to present in essence two constitutional claims: (1) section 263.405
unconstitutionally limits the appellate issues which may be considered; and (2)
section 263.405 unconstitutionally permits a trial court to deny the right to
counsel to an indigent appellant.

            With regard to his first
complaint, he has not identified any issue which he has been prevented by the
statute from presenting to this Court for review.  See M.C., 300 S.W.3d at
314; In re S.N., 292 S.W.3d 807, 811-12 (Tex. App.—Eastland 2009, no
pet.); In re E.A.W.S., No. 02-06-00031-CV, 2006 WL 3525367, at *18 (Tex.
App.—Fort Worth Dec. 7, 2006, pet. denied) (mem. op.).

            With regard to the second
complaint, the trial court advised counsel at the new trial hearing that the
court would not pay for appointed counsel to represent Joel on appeal after
finding that the appeal was frivolous and noting that Joel had failed to appear
for trial and had not recently communicated with counsel.  Nevertheless, this
Court by order dated April 10, 2009 advised the parties that “an indigent
person has a statutory right to appointed counsel to represent him in an appeal
challenging a court’s determination under section 263.405(d) that his appeal is
frivolous.”  In re M.V.G., 285 S.W.3d 573, 576 n.2 (Tex. App.—Waco 2009,
order) (quoting In re
S.T., 239 S.W.3d 452,
457 (Tex. App.—Waco 2007, order) (per curiam), disp. on merits, 263
S.W.3d 394 (Tex. App.—Waco 2008, pet. denied)).  Joel’s counsel has actively
represented him on appeal.

            Joel’s fifth point is
overruled.

The termination order with regard to
both Patricia and Joel is affirmed.

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Affirmed

Opinion
delivered and filed March 3, 2010

[CV06]

 

 

            









[1]
              To protect the
identity of the child who is the subject of this suit, we shall refer
hereinafter to the parents by pseudonyms.  See Tex. Fam. Code Ann. § 109.002(d) (Vernon 2008); Tex. R. App. P. 9.8(b)(2).

 





[2]
              Joel’s mother lives
in Puerto Rico and currently has custody of eight of Patricia’s and his other
children.





[3]
              In fact, the
caseworker testified, “The only relatives [sic] available that I’ve been given
[who] are in Puerto Rico is [sic] the grandmother that had received the
previous children.”





[4]
              Instead, Joel has
briefed this point together with his fifth point challenging the
constitutionality of section 263.405 “[f]or purposes of brevity and
convenience.”  He states in conclusory fashion, “Appellant asserts for all of
the reasons set forth in this Brief that his appeal is not frivolous.”





[5]
              Joel refers in his
brief to Patricia’s jury demand, but the clerk’s record indicates that Joel’s
attorney filed a written jury demand on his behalf.

 





[6]
              In fact, Joel does
not even attempt to explain in his brief how he was harmed by the court’s
erroneous denial of his request for a jury trial other than to say he was
“adversely affected” because the judgment “was rendered herein by the Judge.”