**HOLLYWOOD PARK HUMANE SOCIETY and Hugh Scott, Appellants,**

**v.**

**TOWN OF HOLLYWOOD PARK, Appellee.**

No. 04–07–00131–CV.

Court of Appeals of Texas, San Antonio.

April 2, 2008.

Richard H. Sommer, San Antonio, TX, for Appellants.

Lowell F. Denton, Ryan Henry, Denton, Navarro, Rocha & Bernal, P.C., San Antonio, TX, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, PHYLIS J. SPEEDLIN, Justice, STEVEN C. HILBIG, Justice.

## OPINION

Opinion by STEVEN C. HILBIG, Justice.

This matter involves a dispute over methods used to control the deer population within the Town of Hollywood Park ("the Town"). The Hollywood Park Humane Society ("the Humane Society") and several Hollywood Park residents brought suit against the Town contesting several Town ordinances related to the management of the deer. Ultimately, the case proceeded to trial with the Humane Society and a single resident, Hugh Scott, (collectively "appellants"), requesting that the trial court invalidate an ordinance banning deer feeding on private property, enjoin enforcement of that ordinance, enjoin the Town from mistreating or killing deer, and order payment of damages for inverse condemnation for deer allegedly lost by Scott as a result of the deer management program. The trial court rendered judgment in favor of the Town. The Humane Society and Scott appeal raising four issues: (1) whether they were denied their right to a jury trial, (2) the propriety of the partial summary judgment on inverse condemnation, (3) the validity of the Town's feeding ban ordinance, and (4) the propriety of the trial court's order denying an injunction to preclude alleged inhumane treatment and slaughter of deer. We affirm the trial court's judgment.

### BACKGROUND

At one time the Town had an overpopulation of white-tailed deer within its munic-

ipal limits. The Town representatives contended this overpopulation caused problems including traffic issues, property damage, and safety concerns. To address the deer overpopulation issue, the Town created a Deer Management Committee ("the Committee") to collect information and recommend solutions, and sought advice and information from Texas Parks & Wildlife ("TPW"). TPW told the Town representatives they had four options: (1) obtain a trap, transport and transplant permit ("TTT permit") from TPW; (2) obtain a trap, transport, and process permit ("TTP permit") from TPW, which would permit trapping deer, transporting them, processing them at an approved facility, and donating the meat to charity; (3) obtain a depredation permit from TPW and use professionals to kill the deer on site; or (4) do nothing and allow the deer population to continue to grow. Ultimately, the Town decided to use the relocation or TTT permit. However, to utilize this program, the Town was required by TPW regulations to test a certain percentage of the deer to determine if the herd was diseased with an ailment referred to as Chronic Wasting Disease, which can be transmitted from deer to deer.[1] At the time of the Town's program, the only approved testing method required the subject deer to be killed because the test is run on the brain stem. The Town also obtained a TTP permit to allow it to process a certain number of deer for testing purposes. As part of its deer management program, the Town passed a deer feeding ban within its municipal limits. The ban, which was rec-

ommended by TPW, prohibited the feeding of deer on private property.

Some citizens were angry about the program and claimed that some of the trapped and transported deer were pets. In particular, appellant Scott sought monetary damages for five of "his deer," claiming inverse condemnation by the Town. Certain citizens were also angry about the feeding ban ordinance. Because of the disputes over the feeding ban ordinance and alleged mistreatment of the deer during the trapping process, the Humane Society and nine Hollywood Park residents filed suit against the Town. After several nonsuits, only the Humane Society and Scott remained as plaintiffs.

The Town filed a motion for summary judgment. The trial court granted the motion in part "with regard to the legal issue of ownership of the deer." The trial court determined the remaining issues involved solely legal and not factual determinations and removed the case from the jury docket over appellants' objection. The trial court permitted the parties to present testimony and introduce exhibits. At the conclusion of the parties' presentations, the court denied all relief requested by appellants. The Humane Society and Scott perfected this appeal.

## ANALYSIS

### Right to Jury Trial

In their first issue, appellants contend the trial court erred in refusing their demand for a jury. The argument in this issue consists of a blanket statement that there were numerous fact issues in this

---

1. An entity seeking to transplant deer is required to test ten percent of the number of deer to be relocated. 31 TEX. ADMIN. CODE § 65.102(a) (2005) (Tex. Wildlife Comm'n, Permits for Trapping, Transporting, and Transplanting Game Animals and Game Birds). So, if the Town wanted to relocate one hundred deer, it would have to process ten for testing. After a certain number of deer are tested, however, the percentage that must be tested drops to three percent. *Id.* at § 65.102(c). This is referred to as preferred status. The Town has now qualified for preferred status.

case, and thus appellants were entitled to a jury trial.

■ It is reversible error for a trial court to deny a jury trial when it is demanded, the jury fee is paid, and the case contains material questions of fact. *See Mercedes–Benz Credit Corp. v. Rhyne,* 925 S.W.2d 664, 666–67 (Tex.1996); Tex.R. Civ. P. 216. Here, however, once Scott's claims for inverse condemnation and violations of due process were disposed of by summary judgment, the only remaining issues were appellants' claims that the feeding ban ordinance was invalid and a request to enjoin the alleged mistreatment and killing of deer. Whether an ordinance is invalid and its enforcement should be enjoined are questions of law for the court. *Town of Ascarate v. Villalobos,* 148 Tex. 254, 263–64, 223 S.W.2d 945, 949–50 (1949); *see Espronceda v. City of San Antonio,* No. 04–02–00561–CV, 2003 WL 21203878, at *1 (Tex.App.-San Antonio May 22, 2003, pet. denied) (mem.op.) (holding that whether one challenging validity of ordinance has met burden to invalidate is question of law). Accordingly, appellants were not entitled to a jury trial on the issue of the validity of the feeding ban ordinance. With regard to the request for injunctive relief, we recognize that the right to a jury trial extends to material, disputed issues of fact in equitable proceedings. *Casa El Sol–Acapulco, S.A. v. Fontenot,* 919 S.W.2d 709, 715–16 (Tex.App.-Houston [14th Dist.] 1996, writ dism'd by agr.); *Trapnell v. Sysco Food Servs. Inc.,* 850 S.W.2d 529, 544 (Tex.App.-Corpus Christi

1992), *aff'd,* 890 S.W.2d 796 (Tex.1994). However, such right does not include a determination on the propriety of equitable relief. *Fontenot,* 919 S.W.2d at 716 (citing *State v. Tex. Pet Foods, Inc.,* 591 S.W.2d 800, 803 (Tex.1979)). Here, injunctive relief was sought to prevent enforcement of the deer management ordinances, but the ordinances were unenforceable only if they were somehow invalid under state law. Appellants do not dispute that the ordinances were in accordance with TPW regulations and neither the Town nor its trappers had ever been cited for violation of any TPW regulation. Therefore, even as to injunctive relief, there were no factual questions for a jury to determine. We overrule appellants' first issue.

## *Summary Judgment*

■ Appellants next argue the trial court erred in rendering summary judgment on Scott's inverse condemnation, due process, and "takings" claims.[2] The Town filed a traditional motion for summary judgment pursuant to rule 166a(c). *See* Tex.R. Civ. P. 166a(c). We review a traditional motion for summary judgment *de novo. Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). Summary judgment is properly granted when the movant establishes there are no genuine issues of material fact and it is entitled to judgment as a matter of law on grounds expressly set forth in the motion. *Browning v. Prostok,* 165 S.W.3d 336, 344 (Tex. 2005). When we review an order granting

---

2. In their briefs, both appellants and the Town cite to testimony heard by the trial court outside of the summary judgment pleadings and proof. Such citation is improper. *See Huffine v. Tomball Hosp. Auth.,* 979 S.W.2d 795, 804 n. 2 (Tex.App.-Houston [14th Dist.] 1998, no pet.). In a summary judgment, a trial court's decision must be based upon written pleadings and attached proof,

not live testimony. *See Adamo v. State Farm Lloyds, Co.,* 853 S.W.2d 673, 677 (Tex.App.-Houston [14th Dist.] 1993), *writ denied,* 864 S.W.2d 491 (Tex.1993), *cert. denied,* 511 U.S. 1053, 114 S.Ct. 1613, 128 L.Ed.2d 340 (1994); Tex.R. Civ. P. 166a(c). We will therefore ignore any references to any evidence outside the summary judgment proof.

a traditional motion for summary judgment we take evidence favorable to the nonmovant as true and indulge every reasonable inference from the evidence in its favor. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997).

In their petition, appellants alleged Scott's property was confiscated and he was entitled to recover damages for inverse condemnation because he had been deprived of his property without due process and fair compensation. This allegation was based on appellants' contention that Scott owned property rights in deer taken by the Town under its deer management program. In its motion for summary judgment the Town argued that as a matter of law Scott did not have any individual property interest in the deer and therefore had no standing to make a claim.

▮ Standing is a constitutional prerequisite to maintaining suit. *Tex. S. Univ. v. State St. Bank & Trust Co.,* 212 S.W.3d 893, 903–04 (Tex.App.-Houston [1st Dist.] 2007, pets. denied) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993); *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984)). To have standing to sue for inverse condemnation, the plaintiff must have a property interest in the property at the time of the alleged taking. *Tex. S. Univ.,* 212 S.W.3d at 903. The property interest must be a vested property right, which is one that has been fixed by a final judgment or that has definitive, rather than potential, existence. *Tex. S. Univ.,* 212 S.W.3d at 903. Generally, no such vested property interest exists in wild animals. *State v. Bartee,* 894 S.W.2d 34, 41 (Tex.App.-San Antonio 1994, no pet.).

▮ "All wild animals, fur-bearing animals, wild birds, and wild fowl inside the borders of this state are the property of the people of this state." [3] TEX. PARKS & WILDLIFE CODE ANN. § 1.011(a) (Vernon 2002). The phrase "property of the people of this state" has been interpreted by this court to mean that ownership of wild animals is in "the state" or belongs to "the state." *Bartee,* 894 S.W.2d at 42. We have also recognized that common law provides that wild animals, or "animals *ferae naturae* [,] belong to the state and no individual property rights exist as long as the animal remains wild, unconfined, and undomesticated." *Id.* at 41 (citing *Jones v. State,* 119 Tex.Crim. 126, 45 S.W.2d 612, 613–14 (1931); *Wiley v. Baker,* 597 S.W.2d 3, 5 (Tex.Civ.App.-Tyler 1980, no writ)). One's status as a landowner is insufficient to confer individual property rights to the wild animals on that land. *Nicholson v. Smith,* 986 S.W.2d 54, 60 (Tex.App.-San Antonio 1999, no pet.). However, property rights in wild animals can arise when an animal is legally removed from its "natural liberty" and subjected to "man's dominion." *Id.* Whether this has occurred is determined by whether the animal in question has been reduced to possession, not the animal's habits. *Bartee,* 894 S.W.2d at 41. While it might legally be possible for an individual to acquire a property right in a wild animal, including a deer, this right is qualified and limited to those instances in which the person claiming ownership has removed the animal from nature, confined it, and placed it under the person's dominion and control. *See id.* at 41–42. However, the Texas Legislature has enacted a statute that precludes an individual from capturing, transporting, or transplanting any game animal from the wild unless the individual has obtained a permit

---

**3.** "Wild," when referring to an animal, "means a species ... that normally lives in a state of nature and is not ordinarily domesticated." TEX. PARKS & WILDLIFE CODE ANN. § 1.101(4) (Vernon Supp.2007).

from TPW. TEX. PARKS & WILDLIFE CODE ANN. § 43.061(a) (Vernon 2002).

■ To be entitled to summary judgment the Town therefore had to prove as a matter of law that Scott never acquired property rights in the Hollywood Park deer. In support of its motion, the Town included a transcript from a hearing in federal court on the original plaintiffs' request for a preliminary injunction. At the hearing, Scott admitted the deer did not stay in his yard but would leave and return. Scott essentially admitted he never confined the deer or removed them from their "natural liberty." At the hearing where Scott testified, counsel for appellants stipulated that all the individual plaintiffs, which included Scott, would "testify essentially to what Mr. Rodriguez testified to." Phillip Rodriguez, a former plaintiff in the suit, testified at the same hearing and admitted the deer were not on his property twenty-four hours a day and they were not kept in pens. He testified the deer came in and out of his yard as they chose. Rodriguez also stated he never applied for any permit from TPW that would permit him to trap deer. Counsel also admitted that no Hollywood Park resident would testify they had "penned [the deer] off or roped [the deer] off or anything."

This evidence was sufficient to establish as a matter of law that Scott never obtained a property interest in any of the deer nor any permit entitling him to trap, pen, or otherwise capture the deer. Without a present property interest at the time the deer were trapped and removed from the Town, Scott had no standing to claim inverse condemnation or any other taking in violation of due process. *See Tex. S. Univ.*, 212 S.W.3d at 903. Once the Town established its right to summary judgment, the burden shifted to Scott to raise a fact issue precluding summary judgment.

*See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000). Appellants do not point to any summary judgment proof contradicting the proof submitted by the Town regarding confinement of the deer. There is no evidence that Scott confined, penned, or otherwise restricted the "natural liberty" of the deer to which he asserted a property right. Likewise, there is no evidence he obtained any permit or license that would have allowed him to capture and confine the deer.

The Town proved as a matter of law that Scott lacked standing because he had no property interest in the deer. *See Tex. S. Univ.*, 212 S.W.3d at 903. The trial court properly granted summary judgment in favor of the Town on all issues connected to deer ownership. We overrule appellants' second issue.

### Validity of Feeding Ban Ordinance

■ In issue three, appellants contend the trial court should have invalidated the feeding ban ordinance. However, appellants failed to provide the proof necessary to confer jurisdiction on the court to invalidate the ordinance.

It has long been the law in Texas that a court of equity, *i.e.*, a civil court, has no jurisdiction to enjoin the enforcement of a penal ordinance in the absence of proof that such enforcement would result in irreparable injury to vested property rights. *City of Richardson v. Kaplan*, 438 S.W.2d 366, 366 (Tex.1969) (citing *City of Fort Worth v. Craik*, 411 S.W.2d 541 (Tex.1967); *State v. Logue*, 376 S.W.2d 567 (Tex.1964); *Crouch v. Craik*, 369 S.W.2d 311 (Tex.1963); *Ex parte Sterling*, 122 Tex. 108, 53 S.W.2d 294 (1932); *City of Austin v. Austin City Cemetery Ass'n*, 87 Tex. 330, 28 S.W. 528 (1894)). It is undisputed that the feeding ban ordinance is a penal ordinance. The ordinance provides that

any person who violates the ordinance may be punished by a fine of up to $500.00. HOLLYWOOD PARK, TEX., CODE art. 3, § 4–90(a), (c) (2002). By seeking a declaration in the civil trial court that the feeding ban ordinance was invalid, appellants were asking the court to enjoin its enforcement. *See State v. Morales*, 869 S.W.2d 941, 942 (Tex.1994) (holding that "naked declaration as to the constitutionality of a criminal statute alone, without a valid request for injunctive relief, is clearly not within the jurisdiction of a Texas court sitting in equity."). Moreover, in their live pleading, appellants specifically asked for equitable relief in the form of an injunction:

Plaintiffs request relief from this court in the form of a writ of mandamus, of injunction, and/or of prohibition to order and compel the Hollywood Park Police and Municipal Court to refrain from enforcing the feeding-ban ordinance; and to stay and stop all prosecutions for alleged violations of the feeding-ban ordinances; and/or to declare null and void all convictions of same.

Appellants sought equitable relief from a penal ordinance and therefore, to confer jurisdiction on the trial court, they had to prove enforcement would result in irreparable injury to vested property rights. *See Morales*, 869 S.W.2d at 942. As discussed in issue two, Scott had no vested property rights in the deer. Similarly, the Humane Society had no vested property rights in the deer because there is no evidence the Humane Society or any of its individual members legally removed any of the deer from their "natural liberty" and subjected them to "man's dominion" or obtained a permit from TPW allowing them to capture and confine the deer. *See Bartee*, 894 S.W.2d at 41; TEX. PARKS & WILDLIFE CODE ANN. § 43.061(a) (Vernon 2002). In fact, all parties acknowledged that the deer roamed freely through the Town. Other than the permit trapping by the Town, there was never any attempt made to rope, pen, or otherwise confine the deer.

Without a showing that appellants had a vested property right in the deer that was subject to irreparable harm, the trial court was without jurisdiction to declare invalid or enjoin enforcement of the deer ban ordinance. *See Morales*, 869 S.W.2d at 942; *Kaplan*, 438 S.W.2d at 366. Accordingly, the trial court properly dismissed this request for relief and we overrule appellants' third issue.

### Enjoining Alleged Slaughter and Mistreatment of Deer

In their fourth and final issue, appellants argue the trial court erred in refusing to enjoin the Town "from slaughtering and mistreating the deer." They argue there was "ample evidence that the Township was mistreating the deer" and, therefore the trial court abused its discretion by refusing their request for an injunction to preclude mistreatment. They also argue the Town did not have authority "to seize and slaughter deer" "under the newly-enacted Processing Statute."

▬▬ With regard to their first argument, appellants contend they presented sufficient evidence to compel the trial court to impose a permanent injunction to prevent the Town from mistreating the deer in Hollywood Park. We review a trial court's ruling on an application for permanent injunction under an abuse of discretion standard. *Stein v. Killough*, 53 S.W.3d 36, 40–41 (Tex.App.-San Antonio 2001, no pet.). A trial court abuses its discretion when it acts without guidance from applicable rules and principles of law. *Id.* In conducting the review, we consider

the evidence in the light most favorable to the trial court's judgment. *Id.*

While the Town did not dispute the residents' testimony regarding their observations of alleged inhumane treatment during trapping, the Town argues that even if true, the treatment of the deer was not inhumane as the evidence it presented established the trapping and transport was done pursuant to permits issued by TPW and in accordance with its regulations. The appellants did not dispute the evidence that the Town had the proper permits and had never been cited by TPW for any violation of TPW regulations.

 Because there is no dispute that the trapping and transporting ordinances complied with TPW regulations and neither the Town nor its trappers had ever been cited for violation of any TPW regulation, we hold the trial court did not abuse its discretion in refusing appellants request for an injunction to prevent deer mistreatment.

Appellants next contend the trial court erred in refusing to enjoin the "slaughter" of deer because the statute that authorizes the TTP permit, section 43.0612 of the Texas Parks and Wildlife Code, does not give the Town the authority to kill deer. *See* Tex. Parks & Wildlife Code Ann. § 43.0612 (Vernon Supp.2007). Appellants argue that because the statute does not use any language that would specifically "authorize or empower municipalities to kill deer," the Town should have been enjoined from killing deer under the auspices of the TTP permit. However, appellants neglect to consider section 43.0612(k), which permits the Texas Parks and Wildlife Commission to adopt implementation rules, including rules for the disposition of trapped white-tailed deer:

(k) The commission may adopt rules necessary for the implementation of this chapter, including rules which enhance the opportunity to relocate overpopulation of urban deer and relating to required notification, record-keeping, permit conditions, and the disposition of trapped white-tailed deer.

*Id.* § 43.0612(k).

 The Commission's rules promulgated pursuant to section 43.0612(k) are found in subchapter C of Title 31 of the Texas Administrative Code. Section 65.104, governing TTP permits, specifically authorizes trapped and transported deer to be delivered to an approved "processing facility," which is defined in section 65.101 as the place where white-tailed deer trapped and transported pursuant to a TTP permit will be processed for consumption. 31 Tex. Admin. Code §§ 65.101(8), 65.104(a) (2005) (Tex. Wildlife Comm'n, Definitions & Permit to Trap, Transport, and Process Surplus White-tailed Deer). Section 65.104 further provides that the deer can be euthanized at either the trap site or the processing facility. 31 Tex. Admin. Code § 65.104(c) (2005) (Tex. Wildlife Comm'n, Permit to Trap, Transport, and Process Surplus White-tailed Deer). When read and analyzed in conjunction with the relevant rules from the Administrative Code, section 43.0612 clearly contemplates and authorizes the killing of deer through processing. Appellants have not challenged the propriety of these rules or the Commission's authority to make them. Accordingly, we overrule issue four.

### CONCLUSION

Based on the foregoing, we find no error in the judgment. Accordingly, we overrule appellants' issues and affirm the trial court's judgment.