**Opinion issued August 4, 2022**



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-20-00857-CV

_____

**DEAN WAEL DABBASI, Appellant**

**V.**

**NEWREZ MORTGAGE LLC D/B/A SHELLPOINT MORTGAGE SERVICING, SUCCESSOR-IN-INTEREST TO PNC BANK, NATIONAL ASSOCIATION, Appellee**

---

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 19-DCV-261678**

---

### MEMORANDUM OPINION

NewRez Mortgage LLC *d/b/a* Shellpoint Mortgage Servicing, as successor-in-interest to PNC Bank, National Association, brought suit against Dean Wael Dabbasi for breach of contract and sought judicial foreclosure on a home equity note.

NewRez filed a motion for traditional summary judgment on its claim. After a hearing, the trial court granted the motion, determined the amount of NewRez's lien on the property, and authorized NewRez to commence foreclosure proceedings.

In his sole issue on appeal, Dabbasi argues that the trial court committed reversible error by basing its summary judgment ruling solely on arguments presented at the hearing and not on the summary judgment motion itself or on the evidence. We affirm.

## Background

In 2003, Dean Dabbasi executed a home equity note and deed of trust in favor of National City Mortgage Co., *d/b/a* Accubanc Mortgage, on a parcel of real property located in Missouri City, Texas. The deed of trust required Dabbasi to maintain property insurance and provided that if he did not do so, the lender could obtain insurance coverage on the property through a "force-placed" policy at Dabbasi's expense. Any amounts expended by the lender to obtain force-placed insurance coverage would become "additional debt" of Dabbasi secured by the deed of trust.

Dabbasi maintained property insurance for nearly a decade, but in 2012, his insurance coverage lapsed. Several months later, PNC Bank, as assignee of the deed of trust, sent Dabbasi a series of letters notifying him of the lapse in coverage and warning him that if he did not cure the problem, the bank would obtain a force-

placed insurance policy for the property at Dabbasi's expense. Dabbasi did not respond to PNC Bank's letters. The bank obtained a force-placed insurance policy and charged the premium to Dabbasi's escrow account. PNC Bank then recalculated and increased Dabbasi's monthly payment to account for the premium expenditure, and it debited the higher monthly payment from Dabbasi's bank account. This action caused Dabbasi to contact PNC Bank and dispute the higher amount.

After PNC Bank renewed the force-placed insurance policy and during the parties' ongoing discussions about the monthly payment amount, Dabbasi obtained insurance coverage in late September 2013. PNC Bank ultimately did not charge him for the force-placed policy's renewal premium, but it insisted on a higher monthly payment amount to cover the premium of the first force-placed policy. For several months, Dabbasi attempted to pay the monthly payment amount set out in his initial loan documents, but PNC Bank did not accept these payments because they were not for the recalculated higher amount. It is undisputed that Dabbasi did not make or attempt to make any payments after September 2014.

In 2019, PNC Bank accelerated the balance of the note. It then filed suit against Dabbasi and alleged that he had defaulted on the note by failing to make the required payments as they came due. PNC Bank asserted a claim for breach of contract and sought judicial foreclosure. During the course of the litigation, NewRez Mortgage LLC *d/b/a* Shellpoint Mortgage Servicing ("NewRez") became PNC

Bank's successor-in-interest, and it is the current holder of the note on Dabbasi's property.

NewRez moved for traditional summary judgment on its own claim. It argued that Dabbasi defaulted on the note by failing to maintain insurance coverage and then, after a force-placed policy was imposed and the cost of its premium added to Dabbasi's monthly payment, he defaulted by failing to pay the recalculated payment amount. It argued that the note had been in arrears since September 2014, and Dabbasi owed a total of $193,480.50 on the note, including unpaid principal, interest, fees, and penalties. As summary judgment evidence, NewRez attached documents including the note, the deed of trust, the 2013 letters from PNC Bank concerning insurance coverage, the notice of acceleration, and a loan history showing charges and missed payments.

Dabbasi responded to the motion for summary judgment and argued that he did not breach the contract, but if he did, PNC Bank materially breached the contract first by increasing his monthly payments without authorization. He argued that PNC Bank refused to provide an explanation for the increase and then refused to accept his tender of the monthly payments in the amount required in the note and initial loan documents. In an affidavit, Dabbasi claimed that he never received the letters that PNC Bank sent in early 2013 concerning the problem with insurance coverage.

The trial court held a hearing on the motion in September 2020. At the beginning of the hearing, the court stated, "You want summary judgment. Tell me why." NewRez's counsel then summarized the arguments in its summary judgment motion, pointed to specific exhibits that supported its arguments, and addressed arguments that Dabbasi had made in his response. Counsel stated that NewRez's records showed that Dabbasi had not made any payments after 2014 and the note was "now six years behind." Dabbasi argued that he raised a fact issue on whether he had received the 2013 letters from PNC Bank, and he was unaware of the insurance coverage issue before PNC Bank increased his monthly payments.

At the close of the hearing, the trial court stated, "I'm going to grant the motion for summary judgment. I think it's well founded." To Dabbasi's counsel, the court stated, "I can't believe that your client has not made a payment in all that time and would like more time—would like us to wait for a jury trial, a trial that may not happen in this—in these courts for over a year."

The court signed a final judgment granting NewRez's summary judgment motion. The judgment stated:

> After consideration of the Traditional Motion for Final Summary Judgment of NewRez Mortgage LLC d/b/a Shellpoint Mortgage Servicing, successor-in-interest to PNC Bank, National Association, ("Plaintiff"), against Dean Wael Dabbasi, the response, argument of counsel, pleadings, evidence, admissions, affidavits, stipulations of the parties, authenticated or certified public records, if any, on file at the time of the hearing, the Court finds that the Motion should be GRANTED.

The court ordered that NewRez is the holder of the note, it holds a valid security interest in the property, and Dabbasi defaulted under the note. The court ordered that the amount of the lien held by NewRez is $193,480.50, and it awarded NewRez trial-level and conditional appellate-level attorney's fees. The court also authorized NewRez to engage in foreclosure proceedings.

Dabbasi filed a motion "for new hearing" on NewRez's summary judgment motion. This motion was overruled by operation of law, and this appeal followed.

**Permissible Considerations in Granting Summary Judgment**

In his sole issue on appeal, Dabbasi argues that the trial court erred by granting NewRez's summary judgment motion based on the arguments that counsel presented at the hearing and not on the motion itself and the summary judgment evidence. He argues that the court "made no indication that it had reviewed the pleadings or the evidence and instead indicated that the ruling was made by argument."

## A. *Standard of Review*

We review a trial court's summary judgment ruling de novo. *Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 624 S.W.3d 535, 540 (Tex. 2021). In a traditional summary judgment motion, the movant bears the burden to establish that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When a plaintiff moves for summary judgment on its own cause of action, it must conclusively prove all essential elements of his claim

6

as a matter of law. *Leonard v. Knight*, 551 S.W.3d 905, 909 (Tex. App.—Houston [14th Dist.] 2018, no pet.). If the summary judgment movant establishes his entitlement to judgment, the burden shifts to the nonmovant to present evidence sufficient to raise a genuine issue of material fact. *Id.*; *see Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018).

Summary judgment is improper if the nonmovant brings forth more than a scintilla of probative evidence to raise a fact issue. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* When reviewing a summary judgment ruling, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Hillis v. McCall*, 602 S.W.3d 436, 440 (Tex. 2020) (quoting *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)).

## B.    *Analysis*

A motion for summary judgment shall state the specific grounds for the ruling. TEX. R. CIV. P. 166a(c). The trial court shall render the judgment sought by the movant if:

> (i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time

of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response.

*Id.* A trial court's decision in a summary judgment proceeding must be based on the written motion, response, and attached proof. *See id.*; *Hollywood Park Humane Soc'y v. Town of Hollywood Park*, 261 S.W.3d 135, 139 n.2 (Tex. App.—San Antonio 2008, no pet.).

"Longstanding case law only permits the appellate court to look to the trial court's formal summary-judgment order to determine the trial court's grounds, if any, for its ruling." *Gonzales v. Thorndale Coop. Gin & Grain Co.*, 578 S.W.3d 655, 657 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Mattox v. Cnty. Comm'rs Ct.*, 389 S.W.3d 464, 469 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ("The trial court's rulings are contained in the summary-judgment orders signed by the trial court."). Additionally, we presume the regularity of judgments, absent controverting evidence in the record. *State Off. of Risk Mgmt. v. Berdan*, 335 S.W.3d 421, 424 (Tex. App.—Corpus Christi–Edinburg 2011, pet. denied); *S. Ins. Co. v. Brewster*, 249 S.W.3d 6, 13 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("Well-settled law compels that we presume that proceedings in the trial court, as well as its judgment, are regular and correct."). The presumption of validity is rebuttable, but the burden to rebut the presumption is upon the party challenging the judgment.

*Garza v. Tex. Alcoholic Beverage Comm'n*, 83 S.W.3d 161, 166 (Tex. App.—El Paso 2000), *aff'd*, 89 S.W.3d 1 (Tex. 2002).

In the related context of determining whether a trial court has considered late-filed summary judgment evidence in making its ruling, appellate courts look to whether an "affirmative indication" of consideration of this evidence appears in the record. *See, e.g.*, *Auten v. DJ Clark, Inc.*, 209 S.W.3d 695, 702 (Tex. App.—Houston [14th Dist.] 2006, no pet.). An example of such an "affirmative indication" includes a recital in the summary judgment order that the court considered "the evidence" without any qualification. *See, e.g.*, *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 262 (Tex. 2020) (per curiam) ("Because the trial court recited that it had considered 'the pleadings, evidence, and arguments of counsel,' the court of appeals should have considered that evidence as well in its review of the trial court's summary judgment."); *Stavron v. SureTec Ins. Co.*, No. 02-19-00125-CV, 2019 WL 6768125, at *6 (Tex. App.—Fort Worth Dec. 12, 2019, no pet.) (mem. op.) (stating that summary judgment order "makes clear" that trial court considered supplemental evidence attached to reply when order stated that court considered motion, response, and replies).

Here, Dabbasi acknowledges that the trial court recited in the final judgment that it considered NewRez's summary judgment motion and the supporting evidence. Indeed, the final judgment stated that the court considered the motion for

9

summary judgment, "the response, argument of counsel, pleadings, evidence, admissions, affidavits, stipulations of the parties, authenticated or certified public records, if any, on file at the time of the hearing, [and] the Court finds that the Motion should be GRANTED."

Dabbasi argues, however, that at the summary judgment hearing, the trial court gave no indication that it had read the motion, reviewed the evidence, or made its decision based on the evidence, and instead the record reflected the contrary. Specifically, Dabbasi points to the court's statement, made to NewRez's counsel at the beginning of the hearing, that "[y]ou want summary judgment. Tell me why." He also points to the court's statement, after hearing argument from both parties, that it was "going to grant the motion for summary judgment" and that it believed the motion was "well founded." The court further addressed Dabbasi's counsel and stated, "I can't believe that your client has not made a payment in all that time and would like more time—would like us to wait for a jury trial, a trial that may not happen in this—in these courts for over a year."

We do not agree that these statements made during the hearing are indications that the trial court failed to review the summary judgment motion or the attached evidence. Rather, the court's statements during the hearing are consistent with simply requesting that NewRez begin the hearing by summarizing its arguments stated in the motion for why it believed it was entitled to summary judgment. The

court also asked questions during the hearing that were consistent with points contained in the written motion and response, as well as during oral arguments.[1]

Furthermore, the written final judgment recites that the trial court considered, among other things, NewRez's summary judgment motion, Dabbasi's response, arguments of counsel, and evidence in determining that the summary judgment motion should be granted. Dabbasi points to nothing in the appellate record that contradicts this recital. *See Garza*, 83 S.W.3d at 166 (stating that presumption of regularity of judgments is rebuttable, but party challenging judgment bears burden to rebut presumption). We therefore conclude that Dabbasi has not demonstrated that the trial court committed reversible error in granting NewRez's motion for summary judgment. *See* TEX. R. CIV. P. 166a(c).

We overrule Dabbasi's sole issue.

---

[1] For example, the trial court asked NewRez's counsel what Dabbasi's monthly payments were on the loan and the address to which PNC Bank sent the 2013 letters concerning the insurance coverage issue.

## Conclusion

We affirm the judgment of the trial court.

April L. Farris
Justice

Panel consists of Chief Justice Radack and Justices Countiss and Farris.

12