**Affirmed and Memorandum Opinion filed April 24, 2025.**



**In The**

# Fifteenth Court of Appeals

### NO. 15-24-00052-CV

**RICHARD M. YOUNG, JR. A/K/A RICHARD YOUNG, Appellant**

**V.**

**TEXAS PARKS AND WILDLIFE DEPARTMENT, JOHN SILOVSKY AS WILDLIFE DIVISION DIRECTOR OF TEXAS PARKS AND WILDLIFE DEPARTMENT, AND THE STATE OF TEXAS, Appellees**

**On Appeal from the 216th District Court**
**Gillespie County, Texas**
**Trial Court Cause No. 24-17777**

## MEMORANDUM OPINION

In this appeal involving a breeder deer depopulation notice issued by the Texas Parks and Wildlife Department, we consider whether the trial court properly dismissed Richard M. Young's constitutional and ultra vires claims on the Department's and John Silovsky's plea to the jurisdiction. We conclude that it did, and so we affirm.

# BACKGROUND

Young breeds white-tailed deer in two breeding facilities on his 1500-acre ranch in Gillespie County. With a herd of 124 deer, Young claims to breed "some of the best 'typical' whitetail bucks in Texas."

Chronic Wasting Disease (CWD) was first detected in one of Young's breeder deer in August 2022.[1] The next month, the Department offered Young several herd plans that did not include "total depopulation," but Young refused to meet with the Department until July 2023.[2] By that point, the disease "had already infected 20% of the pens within both facilities," rendering the previous alternatives impracticable and "immediate depopulation" the "only remaining option." By June 2024, 15 cases of CWD had been detected at Young's breeding facilities, with 11 of those coming in 2024. The "large spike" in CWD-positive mortalities in 2024 represented a 175% increase in positives detected compared to the previous two years.

In March 2024, the Department notified Young by letter of its plan to "euthanize and initiate postmortem disease testing of all deer" in his breeding facilities no sooner than April 22, 2024. Young sued the Department and Silovsky in Gillespie County district court, alleging unspecified ultra vires acts, due process violations for not being "afforded an opportunity to be heard on the decision to

---

[1] As we discussed in more detail in *Texas Parks & Wildlife Department v. RW Trophy Ranch, Ltd.*, No. 15-24-00112-CV (Tex. App.—15th Dist. Apr. 10, 2025, no pet. h.), CWD is a type of transmissible spongiform encephalopathy that affects susceptible cervids like white-tailed deer. Because CWD can have "devastating effects on deer herds and the hunting community," the Department "actively works to control" the disease "by enforcing statutes and rules aimed at preventing the spread of CWD throughout Texas."

[2] The Department also created a surveillance zone around the surrounding areas to restrict the movement of deer.

slaughter his" breeder deer, and injunctive relief.[3] Young acknowledged that he had only a "possessory" right in his breeder deer, "as opposed to the ownership of title to the deer," but he averred that he was "entitled to due process." The trial court signed a temporary restraining order prohibiting the Department from euthanizing Young's breeder deer.

The Department and Silovsky answered and filed a plea to the jurisdiction. They argued that Young failed to plead a viable ultra vires claim because they had complied with statutory depopulation requirements and that Young's due process claims were immunity barred because he lacked a vested property interest in his breeder deer. Young later amended his petition to add a claim that the Department's actions—both "taken and threatened" in the depopulation notice— effected a taking of his "real and personal property," along with a claim that the Department had violated the Texas Constitution's prohibition against warrantless searches and seizures.

The trial court conducted a non-evidentiary hearing on the plea to the jurisdiction. Young stressed that he wanted his "day in court to challenge [the Department's] testing procedures, whether [CWD] is a transmittable disease, whether [CWD] is a threat." Comparing the facts here to those in *Tyler v. Hennepin*, a then-new takings opinion from the United States Supreme Court, Young argued that he had a vested property interest in his breeder deer under the common-law doctrine of *ferae naturae*, which predated Texas's statutory scheme regulating the deer breeding industry. The trial court permitted the parties to file supplemental briefing on the jurisdictional issues before granting the plea. This

---

[3] Young also sued the Texas Animal Health Commission (TAHC). TAHC issued a quarantine order for Young's breeding facilities in September 2022, which Young challenged via the administrative appeals process. TAHC disputes Young's position that he ultimately prevailed, but regardless, TAHC is not a party to this appeal, nor is the quarantine order before us.

appeal followed.[4]

## DISCUSSION

In a single issue divided into several subparts, Young argues that the trial court erred by granting the plea to the jurisdiction because he alleged viable due process, takings, and ultra vires claims sufficient to waive the Department's sovereign immunity. The Department responds, and we agree, that Young did not plead any actionable claim.

State agencies like the Department are generally entitled to sovereign immunity, as are officers employed by agencies when sued in their official capacity.[5] Sovereign immunity from suit defeats a trial court's subject-matter jurisdiction and is properly raised in a plea to the jurisdiction.[6] When, as here, a plea to the jurisdiction challenges the pleadings, we determine if the pleader alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case.[7] We construe the pleadings liberally in favor of the plaintiff while looking to the pleader's intent.[8] We review the trial court's order de novo.[9]

---

[4] Young appealed to the Fourth Court of Appeals, which issued an order "temporarily" granting his emergency Rule 29.3 motion to stay the Department from depopulating his breeder deer and invited the Department to file a response. *See* Order, *Young v. Tex. Dep't of Parks & Wildlife*, No. 04-24-00441-CV (Tex. App.—San Antonio July 16, 2024). The Department filed a response, and Young a reply, but the case was transferred to this Court before the Fourth Court took further action on Young's Rule 29.3 motion. On October 4, 2024, we denied Young's motion and lifted the temporary stay previously issued by the Fourth Court. Young sought mandamus relief in the Texas Supreme Court, but it denied his petition. *See* Notice, *In re Young*, No. 24-0880 (Tex. Oct. 25, 2024). The Supreme Court also denied Young's request to re-transfer the appeal back to the Fourth Court. *See Denial of Request to Retransfer Case from the Fifteenth Court of Appeals*, Misc. Docket 24-9077 (Tex. Oct. 21, 2024).

[5] *Matzen v. McLane*, 659 S.W.3d 381, 387 (Tex. 2021); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 380 (Tex. 2009).

[6] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).

[7] *Id.* at 226.

[8] *Id.*

4

Although sovereign immunity does not bar either a suit to vindicate constitutional rights, *Klumb v. Houston Mun. Emp. Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015), or a claim brought against a state official for nondiscretionary acts unauthorized by law, *Heinrich*, 284 S.W.3d at 372, Young must have pleaded facially valid claims to bypass the immunity bar.[10] He did not do so.

## I. Due Course of Law and Due Process Claims

Young alleged that he was denied his state and federal constitutional rights to due course of law and due process in connection with the Department's decision to depopulate his breeder deer.[11] But we previously held in a different case addressing the same issue that deer breeders like Young do not have a vested property right in their breeder deer, and thus are not entitled to procedural and substantive due process protections when the Department proceeds with depopulation. *See Tex. Dep't of Parks & Wildlife v. RW Trophy Ranch, Ltd.*, No. 15-24-00112-CV (Tex. App.—15th Dist. Apr. 10, 2025, no pet. h.).[12] That ruling applies equally here.

Young suggests that rights he has in his *land* and deer breeding *permit* entitle him to raise due process claims relating to the euthanization of his *breeder deer*, but he cannot use a protected interest in one type of property to establish a

---

[9]     *Matzen*, 659 S.W.3d at 388.

[10]     *See Matzen*, 659 S.W.3d at 388 ("If … the actions alleged to be ultra vires were not truly outside the officer's authority or in conflict with the law, the plaintiff has not stated a valid ultra vires claim and therefore has not bypassed sovereign immunity."); *Klumb*, 458 S.W.3d at 13 ("[I]mmunity from suit is not waived if the constitutional claims are facially invalid.").

[11]     *See* TEX. CONST. art. I, § 19; U.S. CONST. amend. XIV, § 1. We construe Young's due process claim as including a challenge to the constitutionality of Parks and Wildlife Code Section 43.954.

[12]     *See also Tex. Dep't of State Health Servs. v. Crown Distrib. LLC*, 647 S.W.3d 648, 655 (Tex. 2022).

vested right in a different one.[13] And as we explained in *RW Trophy Ranch*, any "qualified rights" or "possessory interest" a deer breeder may have in his breeder deer is "subordinate and subject to the Legislature's authority to regulate the deer breeding industry," and thus cannot "give rise to a heightened vested property interest entitled to due process protection." *See* No. 15-24-00112-CV at *17. We overrule the part of Young's issue challenging the dismissal of his due process claim.

## II. Takings or Inverse Condemnation Claims

Young generally alleged that the Department's actions, including those threatened in its depopulation notice, constituted a taking of his "real and personal property" in violation of the state and federal constitutions.[14] Young provides significantly more detail (and argument) on appeal, contending that the Department's actions effected a regulatory taking of his "land, business, permit rights, and deer." We address each basis.

### A.     Breeder Deer

Like his due process claim, Young must have a vested property interest in the subject property to assert a valid takings claim under both the state and federal constitutions.[15] Our holding above that Young lacks a vested property interest in

---

[13]     *See, e.g.*, *Hollywood Park Humane Soc'y v. Town of Hollywood Park*, 261 S.W.3d 135, 140 (Tex. App.—San Antonio 2008, no pet.) ("One's status as a landowner is insufficient to confer individual property rights to the wild animals on that land."); *City of La Marque v. Braskey*, 216 S.W.3d 861, 863 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("The issue here is not whether Braskey had a property right in the facility, but rather whether *her use* of the facility, as a cat shelter, was a vested property right."); *Cf. Tex. Dep't of State Health Servs. v. Crown Distrib. LLC*, 647 S.W.3d 648, 657 (Tex. 2022) ("We therefore narrowly define their asserted interest accordingly and ask whether the right to engage in *that* economic endeavor enjoys the due course clause's protection.").

[14]     *See* TEX. CONST. art. I, § 17; U.S. CONST. amend. V.

[15]     *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994); *TxDOT v. City of Sunset Valley*, 146 S.W.3d 637, 644 (Tex. 2004); *JRJ Pusok Holdings, LLC v. State*, 693 S.W.3d 679,

his breeder deer applies equally to his claim that the Department's depopulation efforts effected a taking of the same deer.

Young raises several arguments that we did not address in *RW Trophy Ranch*, but they do not affect our decision.

Young first directs us to *Tyler v. Hennepin County*, 598 U.S. 631 (2023). In that case, the County seized Tyler's condo and sold it for $40,000 to satisfy a $15,000 property tax debt, but rather than return the remaining $25,000 to Tyler, the County kept it for itself as permitted by state law. *Id.* at 635. Under Minnesota's forfeiture laws, "limited title" to real property vests in the State when a county obtains a judgment against the property for delinquent property taxes. *Id.* But if the owner does not timely redeem the property by paying the debt, then "absolute title" vests in the State, which could then sell the property and retain any proceeds in excess of the tax debt. *Id.* The Supreme Court concluded that Tyler had plausibly alleged a viable takings claim because although the County "had the power to sell Tyler's home to recover the unpaid property taxes," it "could not use the toehold of the tax debt to confiscate more property than was due," i.e., the excess $25,000. *Id.* at 639. "By doing so, it effected a classic taking in which the government directly appropriates private property for its own use." *Id.*

Comparing the facts in *Tyler* to those here, Young argues that the common law doctrines of *ferae naturae* and the rule of capture existed long before the Texas Legislature stepped in and began regulating white-tailed deer. In doing so, the Legislature "legislated away" his property rights just like Minnesota's Legislature did when it gave the State the statutory right to retain the proceeds from the sale of real property to satisfy a delinquent tax bill. We disagree for several reasons.

---

686 (Tex. App.—Houston [14th Dist.] 2023, pet. filed).

*First*, the facts are meaningfully different. Under the doctrine of *ferae naturae*, wild animals belong to the state only so long as they remain "wild, unconfined, and undomesticated."[16] If the animal is removed from its "natural liberty" and "reduced to possession," then "property rights … can arise."[17] This is the rule of capture as applied to animals.[18] Unlike the Minnesota law, the Texas deer breeding statutes do not regulate property in which someone has an existing vested interest (real property). They regulate a wild animal that, indulging Young's argument, would not become a deer breeder's property until *after* exercising dominion over it. That extra step to supposedly achieving a protected property interest did not exist in *Tyler*.[19]

*Second*, we cannot accept Young's implied invitation to ignore the historical context from which Texas's deer breeding laws derive. Early America "welcomed the rule of capture with open arms," but "vigorous capture rules fostered by early America's pioneer spirit resulted in the extinction of many species in the New World and the depletion of populations of many more."[20] State legislatures responded by enacting legislation aimed at protecting wildlife populations, which courts upheld using a "uniquely American justification for regulation": the public

---

[16] *Hollywood Park Humane Soc'y v. Town of Hollywood Park*, 261 S.W.3d 135, 140 (Tex. App.—San Antonio 2008, no pet.); *State v. Bartee*, 894 S.W.2d 34, 41 (Tex. App.—San Antonio 1994, no writ); *see Dobie v. State*, 48 S.W.2d 289, 290 (Tex. Crim. App. 1932) ("The ownership of wild game, so far as it is capable of ownership, is in the state for the benefit of all its people in common.").

[17] *Hollywood Park Humane Soc'y*, 261 S.W.3d at 140.

[18] *See TDX Energy, L.L.C. v. Chesapeake Operating, Inc.*, 857 F.3d 253, 256–57 (5th Cir. 2017) ("if you catch it first, it is yours").

[19] We also note that taxes like those in *Tyler* do not continue to spread to excess property after a foreclosure sale. But CWD can continue to spread after a partial depopulation to the rest of a herd for a long time, as there is no way to tell which deer are infected if they are asymptomatic without postmortem testing.

[20] Michael C. Blumm & Lucas Ritchie, *The Pioneer Spirit and the Public Trust: The American Rule of Capture and State Ownership of Wildlife*, 35 ENVTL. L. 673, 684, 693 (2005).

trust doctrine.[21] Under the public trust doctrine, the State's natural resources are held in trust for the benefit of the people.[22] As the Third Court of Appeals explained in *Bailey v. Smith*, Texas "essentially codified" the doctrine in 1907 when it enacted the predecessor to Section 1.011(a) of the Parks and Wildlife Code.[23]

Subchapter L to Chapter 43 of the Parks and Wildlife Code and the rest of the deer-related statutes found in other parts of the Code are direct descendants of Texas's early efforts to protect and manage the state's wildlife resources for the benefit of the people. By asking us to apply the common law doctrines of *ferae naturae* and capture wholly separate and apart from this statutory scheme, Young would have us set aside as irrelevant over two-hundred years of history. We of course cannot do that. The people of Texas, speaking through their duly-elected representatives in the Legislature, have decided the only way white-tailed deer can be legally removed from the wild and held captive is to obtain a permit to either breed or manage the deer.[24] The State's authority to regulate wildlife as part of its police power to protect this natural resource is beyond question.[25]

---

[21]     *Id.* at 693.

[22]     *See Williams Alaska Petroleum, Inc. v. State*, 529 P.3d 1160, 1187 (Alaska 2023) ("The public trust doctrine provides that the State holds certain resources (such as wildlife, minerals, and water rights) in trust for public use, and that government owes a fiduciary duty to manage such resources for the common good of the public as beneficiary."); *cf. Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 653 (Tex. 2020).

[23]     581 S.W.3d 374, 390 (Tex. App.—Austin 2019, pet. denied).

[24]     *See* TEX. PARKS & WILDLIFE CODE §§ 43.351–.369, 43.601–.607; *see Baily*, 581 S.W.3d at 391 ("legally removed"); *Bartee*, 894 S.W.2d at 41 ("legally removed"); *see also Jones v. State*, 45 S.W.2d 612 (Tex. Crim. App. 1931).

[25]     *See Ex parte Blardone*, 115 S.W. 838, 840 (Tex. Crim. App. 1909) ("From the earliest traditions, the right to reduce animals ferae naturae to possession has been subject to the control of the law-giving power." (quoting *Greer v. Connecticut*, 161 U.S. 519, 522 (1896), overruled on other grounds by *Hughes v. Oklahoma*, 441 U.S. 322 (1979)); *Bailey*, 581 S.W.3d at 393 ("The statutory scheme simply leaves no room for common law property rights to arise in breeder

Young also directs us to the dissenting opinion in *Bailey*, which reasoned that the Parks and Wildlife Code "does not clearly express legislative intent to abrogate the common law principle providing property rights to deer breeders who legally remove breeder deer from their natural liberty and subject them to man's dominion."[26] But while no provision expressly states that such rights are abrogated, the only conclusion to be drawn from a review of the Legislature's statutory scheme in Subchapter L and other deer-related statutes is that deer breeders do not have a vested interest in breeder deer. *See RW Trophy Ranch*, No. 15-24-00112-CV at \*11–18.

We overrule the part of Young's issue challenging the dismissal of his takings claim based upon the breeder deer.

## B.      Ranch Land

In *RW Trophy Ranch*, we held that the deer breeder failed to allege a valid regulatory taking of his land based upon the Department's efforts to depopulate his herd of breeder deer. *See* No. 15-24-00112-CV at \*21–24. We concluded that the Department's depopulation efforts did not go "too far" so as to implicate a *Penn Central*-type taking and that the deer breeder had not alleged a viable exaction-type taking. *Id.* We see nothing in Young's pleadings to differentiate his regulatory land-takings claim from the one we considered in *RW Trophy Ranch*, and so our decision there dictates the same result here.[27] Young does argue for the first time

---

deer."); *Bartee*, 894 S.W.2d at 43 ("Wholly apart from its authority to protect the common ownership of wild animals, the right of the State to preserve wild animals cannot be disputed due to the undoubted existence of a police power to that end.").

[26]      *Bailey*, 581 S.W.3d at 403 (Goodwin, J., concurring and dissenting).

[27]      Young directs us to a recent decision by the Texas Supreme Court holding that "damaged" in Article 1, Section 17 covers both physical damage and non-physical interference with use and enjoyment. *See Commons of Lake Houston, Ltd. v. City of Houston*, 2025 WL 876710, at \*5 (Tex. Mar. 21, 2025). Like the Texas Supreme Court, we acknowledge that "damaged" in Article 1, Section 17 may include non-physical interference with use and

on appeal that the Department's depopulation efforts also effected both a physical taking and a *Lucas*-type taking—two other types of regulatory takings.[28] But we cannot agree because there is no allegation or indication that depopulation would either cause a "permanent physical occupation" of Young's land,[29] or deprive Young of "*all* economically beneficial uses" of his property.[30]

We overrule the part of Young's issue challenging the dismissal of his takings claim based upon his land.

## C.   Deer Breeding Permit and Business

Young argues that he alleged a viable regulatory taking of his deer breeding permit and business when the Department "locked down [his] land, breeding operation, and rights under the permit." The Department responds that any "privileges [Young] may gain via his permit are necessarily subordinate to the Legislature's authority" to depopulate deer that pose a threat.[31]

Insofar as Young has a vested property interest in his permit during its term,[32] he did not allege a viable takings claim for many of the same reasons we concluded the deer breeder in *RW Trophy Ranch* did not allege an actionable takings claim of his land. *See* No. 15-24-00112-CV at *21–23. Young is able to

---

enjoyment of property, but Young has not pleaded facts sufficient to state such a takings claim.

[28]   *See Lingle v. Chevron*, 544 U.S. 528, 548 (2005) (identifying regulatory takings as including a "physical taking," a "*Lucas*-type total regulatory taking," a "*Penn Central*" taking, and a "land-use exaction").

[29]   *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982); *see Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 671 (Tex. 2004).

[30]   *Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992); *see Sheffield*, 140 S.W.3d at 671.

[31]   Young combines his briefing on, and draws no distinction between, his permit and his business. We therefore address them together.

[32]   *See St. Jude Healthcare, Ltd. v. Tex. Health & Human Servs. Comm'n*, 2021 WL 5904337, at *13–15 (Tex. App.—Houston [1st Dist.] Dec. 14, 2021, no pet.) ("Any property interest St. Jude held in connection with its license expired upon the expiration of the license.").

possess white-tailed deer and breed them only because the State allows him to do so. The privilege is expressly subject to all of the statutes and regulations governing the industry, including the provisions that permit the Department to destroy deer for the purpose of mitigating the spread of disease, an important part of the Department's duties in managing Texas wildlife.[33] When it does so, the interference with a deer breeder's permit and business is ordinarily limited in both duration and scope. The Department has made no attempt to cancel Young's permit, and although it initially gave Young several options to mitigate the spread of CWD that did not include complete depopulation, Young took no action until after those options were no longer feasible. Giving due consideration to all relevant considerations and circumstances, we cannot conclude that the Department's depopulation efforts went "too far" so as to rise to a regulatory taking of the *Penn Central* type, or that Young pleaded a viable physical invasion or *Lucas*-type taking.[34]

We overrule the part of Young's issue challenging the dismissal of his takings claim based upon his permit and business.

## III. Ultra Vires Claim

Young lastly argues that he alleged an actionable ultra vires claim complaining of Silovsky's failure to comply with statutory requirements in issuing the depopulation notice.

An official may act ultra vires by acting "without legal authority," as Young

---

[33]   *See* TEX. PARKS & WILDLIFE CODE §§ 12.013, 43.364, 43.953.

[34]   *See Sheffield*, 140 S.W.3d at 670–72. Young's supporting caselaw, which does not involve this unique deer breeding context, is inapposite. *See City of N. Richland Hills v. Home Town Urban Partners, Ltd.*, 340 S.W.3d 900 (Tex. App.—Fort Worth 2011, no pet.); *City of Carrollton v. McPhee*, 2009 WL 2596145 (Tex. App.—Dallas Aug. 25, 2009, no pet.).

alleges here.[35] "An officer acts without legal authority if he exceeds the bounds of his granted authority or if his acts conflict with the law itself."[36] But if "the actions alleged to be ultra vires were not truly outside the officer's authority or in conflict with the law, the plaintiff has not stated a valid ultra vires claim and therefore has not bypassed sovereign immunity."[37]

In *RW Trophy Ranch*, we set out and discussed the statutes governing the Department's authority to destroy breeder deer. No. 15-24-00112-CV at *19–20. We reference those same statutes in analyzing Young's arguments, each of which we reject.

Young first contends that the Supreme Court's decision to overrule *Chevron* deference "becomes important when examining" his claims against Silovsky.[38] But our construction of the relevant unambiguous statutes relies upon our own application of well-accepted rules of statutory construction, not any deference to the Department's interpretation.

Young argues that Silovsky was mistaken in describing his breeder deer as "wild," but that word, "when used in reference to an animal, means a species, including each individual of a species, that normally lives in a state of nature and is not ordinarily domesticated."[39] White-tailed deer comfortably fall within that description.

Young argues that Silovsky's determination that Young's breeder deer pose a threat to other deer or species "is not the only one that matters," and that Young's

---

[35] *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016).

[36] *Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021).

[37] *Id.*

[38] *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

[39] TEX. PARKS & WILDLIFE CODE § 1.101(4).

13

allegation that his breeder deer are *not* a threat must be taken as true under the standard of review. But the only threat determination that matters from a statutory standpoint, namely Section 43.953(b), is the Department's. And though we liberally construe Young's pleadings, ultra vires claims "depend on the scope of the state official's authority," which we evaluate against the relevant statutory or other legal authorities, not a plaintiff's *ipse dixit*.[40]

Young is displeased with the restricted access zones imposed on his land, but they expressly apply only during the act of depopulation, for safety purposes, consistent with the Parks and Wildlife Code.[41]

We overrule the remainder of Young's issue.

Young asks us to remand this case to the trial court to give him an opportunity to replead, but we decline to do so because his pleadings, including all of those set out in his Reply, affirmatively demonstrate incurable defects in jurisdiction.[42]

## CONCLUSION

Having overruled Young's issue, we affirm the trial court's judgment.

/s/ Scott A. Brister

Scott A. Brister
Chief Justice

Before Chief Justice Brister and Justices Field and Farris.

---

[40] *Honors Academy, Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018).

[41] *See* TEX. PARKS & WILDLIFE CODE § 43.954(b)(2).

[42] *See Miranda*, 133 S.W.3d at 226–27.